May it please the Court, this appeal involves issues of policy interpretation under Missouri law. Although Cincinnati has ultimately, excuse me, my client Jacob Rieger has sought reimbursement from Cincinnati for defense costs incurred defending against a trademark damages claim brought against it by a winery in Oregon. Although Cincinnati ultimately acknowledged the trademark claim was covered under the policy, Cincinnati has refused to pay two incurred prior to receiving notice of the lawsuit, and the second are the defense costs that were incurred after the lawsuit in Oregon was dismissed without prejudice. Those defense costs led to an ultimate settlement of $0 with the winery that ultimately benefited both Jacob Rieger and Cincinnati who had identified coverage. While Cincinnati's primary defense in this case is Jacob Rieger, they settled the case six months after. They had notice of it at the time of settlement. So at the time that notice was given of the Oregon lawsuit, the Oregon lawsuit was still going on. Cincinnati made a reservation of rights and elected not to defend, and Jacob Rieger continued to defend that case and then ultimately settled it for $0 approximately seven months or eight months later. Now during the six month period where Cincinnati delayed giving a coverage decision, Jacob Rieger was told by Cincinnati that filing a declaratory judgment action against the winery would not affect or was not likely to affect its coverage decision. Jacob Rieger then did so, gave a copy of the complaint to Cincinnati, and Cincinnati continued to defend Jacob Rieger's decision for approximately six months from the initial notice date. That was the period of time. Now this was done on summary judgment. So where in the record do I go to confirm what you just said about what they told your client to do? In the addendum, Your Honor, we have a transcript of a recording with Amy Winecoop who was the initial claims handler on the claim. Telephone conversations? Yes, sir. Yes, Judge. So let me primarily address the two categories of issues at issue on the contract claim, which are the pre-notice and the post-notice costs. Under Missouri law... Well, do the first post-notice first because it's easiest. You had the plaintiff not being a named insured. How can you get around that? Thanks, Judge. So the plaintiff was not the named insured of the declaratory judgment action, but the duty to defend arose from the filing and notice of the Oregon lawsuit in which Jacob Rieger was the plaintiff. Jacob Rieger told Cincinnati it was going to file the DEC action. But it didn't. Well, it did file it eventually. No, it didn't. A different corporation did, right? Well, yes. In Missouri, they're separate entities. Yes, but Jacob Rieger also gave a copy of the amended petition with GSP licensing as the plaintiff to Cincinnati. Cincinnati didn't say anything about that for several months before denying coverage. When was that done in relation to this? That was, I think, three months after notice was provided. Is there a duty? Notice of settlement? Notice of the lawsuit in Oregon. So Jacob Rieger provided notice, a copy of the petition on July 22nd of 2019. And that's the Oregon petition? That was the declaratory judgment action in Missouri. In Missouri. Yes. Sorry, there's a lot of lawsuits to keep track of. So, to answer your question, Judge Benton, what we're seeking recovery for are defense costs that were not incurred by GSP licensing. They were incurred by Jacob Rieger. Well, counsel, do you mean that we're going to have the insurance coverage depends on who pays it, not on who the party is, and who sues, and who has the right to enforce the judgment and gets the judgment? It seems to me like this is an incredible sort of inquiry. I think it's a very limited circumstance here because Jacob Rieger was the party that was liable for the covered claim. The covered claim was for trademark damages. And if Cincinnati, when they had been given notice of the lawsuit in Oregon, if they had accepted the defense at that time, they could have decided how to proceed. Whether to file a declaratory judgment action. What's your best Missouri case for proposition troubling Judge Benton? The fact that the named party was not covered, was not insured, doesn't preclude? I would say that the best case we have is the Allen v. Byers case, which, of course, didn't deal with the issue of the name insured, but did deal with the fact that if an insurance company wrongfully refuses to defend, and this is a general proposition. There was no wrongful refusal here. It was a delayed refusal. But they had an obligation to defend once they were on notice. And they were on notice before this declaratory judgment action was filed. On which case now? They had an obligation to defend against the trademark claim. In Oregon or? Well, they had, in Oregon, once they were put on notice, they had an obligation to defend. And then they had an obligation, if they had accepted defense, they could have decided whether to file the declaratory judgment action, who to make the name plaintiff, and etc. But they didn't do any of that. And Jacob Rieger incurred those costs. You're aware of the many Missouri appeals court cases that have a lot of black letter to cover any entity other than the named insured, provides coverage where there's none under the policy. There's several of those cases. And this court has repeated that language. I agree, Your Honor. But let's imagine for a moment that there was no declaratory judgment action filed at all. So the lawsuit in Oregon is dismissed without prejudice. The claim still exists. The threat of the lawsuit still exists. Jacob Rieger then settles, which is what happened with Domain Serene, the trademark claim. Wouldn't they have coverage, in my opinion, the insurance company should have defended and settled that claim regardless of whether there was a declaratory judgment action. And those are the fees for which we're seeking. I've got to come back. Your prior statement was if they had timely accepted the defense in Oregon, they could have decided whether GPS should commence a suit in Missouri. Wow. What case gives an insurer the power to commence an action in the name of a non-insured affiliate of its insured? Well, I think that Jacob Rieger has an obligation to cooperate, and they could have decided to do that together and allowed that to happen. That's much different than what you said. Then I will amend the statement. I think that the point being that they could have decided how to defend the case. Your client could have waited until they had an answer to the defense request before suing. An answer to the declaratory judgment? You commenced the Missouri GPS. I've got a schedule of the dates, but there's so many I can't keep them straight. The GPS sued on April 4th for declaratory judgment. The Oregon suit was dismissed on April 8th. It wasn't until July 22nd, over three and a half months later, that your client bothered to give the insurer a copy of what it had done on its own in the name of another party. Then two months after that, there's the coverage decision with regard to the Oregon. You obviously could have waited. No time bars were running. No, but the problem was the client, Jacob Rieger, was not able to begin selling the monocram labeled whiskey again without potentially incurring additional trademark damages, because the trademark claim remained live. They had advised Cincinnati that they were going to file the DEC action, and they had advised them that they were waiting to serve the DEC action until they got a coverage decision. Where do I go on the record to find out how much revenue was at risk in those five months? I don't think that's in the record. The discovery had not been taken on that issue by Cincinnati. We're at summary judgment. Yes, sir. Proceed. Let me address... I'm getting confused here. Does this really come down to the fact that had Cincinnati showed up earlier on scene, they would not have committed the error of including a non-insured in the Missouri DEC action? Is that what this comes down to? I don't think it was an error. It was a strategic choice to try to claim a good venue to resolve this trademark damage. Which obviously didn't turn out that well since the key issue here, right? No, it turned out perfectly. Well, but you're here arguing that you need fees for it, so it obviously wasn't quite perfect. Well, no, it turned out perfectly because it resulted in a settlement for Jacob Rieger, the insured, You've removed another argument because, as you know, the policy says Cincinnati has a right to defend the insured, and that's carefully defined as it is in insurance policies. I understand. So go to another issue. Let me talk about the pre-notice costs. And I'll also mention that if, in fact, there's no coverage under the post-notice costs, then we believe the tort claim should be revived, but we will rely on our briefing for that. So under Missouri law, it is a strong rule of law that you have to have prejudice to refuse coverage in the event that an insured gives untimely notice. Were the Weaver case, Columbia, Trezner, all these Missouri Supreme Court cases called to the district court's opinion? Called to the district court's opinion? Yeah, yeah. Were they briefed to the district court? Yes. They were briefed mostly in the motion for reconsideration. Okay. Because they didn't raise the issue of prejudice in their motion for summary judgment. It was raised for the first time in their reply. And then the district court decided the issue, and then we filed the motion for reconsideration, laying out the prejudice issues, and the district court denied that. Would you summarize for me what the legal holding was of the district court? I mean, I've looked at the Billings case. I've read the cases cited by Judge Benton. I mean, what legal standard? Who had the burden here? Was it a finding of fact or a finding of law that the district court made here? Well, I think— Because I can't make either tails of Billings. Well, I think Billings is not the controlling case. But it was all over the place. It kind of laid out three tests and said all three tests apply here. But it was all over the district court's opinion. It was. And that was the decision that they had cited in their reply brief. But I would go back to the Weaver case. Substantial prejudice is required. It's an affirmative defense, and it has to be proved by the insurance company. They had the obligation to come forward with evidence. There's absolutely no evidence of prejudice here. In fact, there's the opposite of evidence of prejudice. Their corporate representative testified at the deposition. She wasn't aware of anything they would have done differently to litigate the Oregon case. She testified it wasn't over-litigated or under-litigated. So if we agree with you, do we remand for findings on that? I don't think—well, I think you could do one of two things. You can either reverse and remand for a trial, or I would submit that the record here established that the district court should have granted our affirmative motion for summary judgment on this defense. In my many years of cases involving issues of this kind, I have just taken it as a given that the insurer's ability to control the litigation, settlement tactics, strategy, experts, and so forth, is what the duty to defend is all about. And so, of course, there's substantial prejudice to be deprived of that. Even if, as a matter of hindsight, it didn't turn out to be important. Now, you give me a case that is counter to my understanding of this universe. Weaver v. State Farm, the Missouri Supreme Court in that case, held that prejudice is an affirmative defense that must be proven by the insurance company. And in that case, even though the insurance company came forward with an affidavit— I knew that generality. I'm talking about a case that says to an insurance company, just telling us how important it is in most cases to have timely notice so you get control of the litigation. Isn't a sufficient showing of prejudice here? In Weaver, Your Honor, the insurance company submitted an affidavit identifying all the things they would have done if they had had greater notice. The Missouri Supreme Court, nonetheless, held that that was not sufficient to establish prejudice as a matter of law. And I would submit in our case, we have the opposite, in which we've submitted affirmative evidence from Cincinnati that they're not aware of anything they would have done differently here. And remember, the outcome was not a judgment that Cincinnati was being asked to indemnify. The outcome was dismissal without prejudice of the Oregon lawsuit in favor of the insured. If there are no further questions, I'll reserve my time for rebuttal. Thank you very much. May it please the Court, my name is David Bubb, and I represent Cincinnati Insurance in this appeal. I first want to address... Would you please start by telling me whether you agree with the opposing counsel's reading of Weaver in response to my last question? Yes, Your Honor. I disagree. Well, okay. So why?  including Weaver that we're talking about, that were cited by the appellant deal with forfeiture of coverage. In other words, the insurance company says, we are denying coverage to you because you didn't provide us any notice, and they walked away. The indemnity issue. Well, on the defense as well. And here, there is no forfeiture of coverage. And that's, Judge Logan, where I was about to start. I want to make sure the Court is clear that Cincinnati, once they were put on notice of the Oregon lawsuit, did provide coverage. From that point on, they agreed with Jacob Reeker, that from that point on, in the Oregon lawsuit, where they were in fact sued, that they would provide coverage, they would provide defense, and they did provide defense. Now, from a timing standpoint, there wasn't much to do, because at that point, when they were put on notice, the motion to dismiss had already been fully briefed, argued, and they were simply awaiting the decision of the Oregon Court. But there were some post-noticed Oregon fees that were incurred, that Cincinnati agreed to and did pay for. And as it is absolutely undisputed, at that point, when that case was dismissed, and yes, it was without prejudice, the case from the standpoint of Cincinnati's obligations is done. I apologize, I can't remember which judge brought it up, but this policy, like any liability policy, provides coverage to defend a lawsuit, a covered lawsuit, where the insured is being sued for monetary damages, property damages, or partial injury. So once the Oregon Court case was dismissed, from the standpoint of Cincinnati, there was no other coverage that needed to be provided. The policy does not provide for an insured or non-insured to file a lawsuit, and that the insurance company at that point has to provide attorney's fees to prosecute that lawsuit. If Jacob Rieger would have been sued again, and the argument was that they believed, it was their opinion, that they might be sued again, which, as the court is aware, never happened, that if that happened, and Cincinnati was put on notice of it, timely put on notice of it, at that point, it would have gone through the coverage decision, and if it was the same allegations in Oregon, would have likely provided coverage. But as Judge Logan, I believe, or Judge Benton, again, I apologize, one of you brought up, this issue of whether or not this is a, I think it was referred to at one point as an offensive defense, but this idea of the lawsuit being filed by the insured and requesting coverage for that, we simply don't get to that issue. We just don't. It's a non-issue because GSP licensing, and it is admitted, and it is not disputed at all, is not an insured under this policy. The only cases that were cited by the appellant in favor of coverage dealt with the situations where you had a named insured that either merged, was taken over, brought out with another entity, and whether or not that subsequent entity would qualify as an insured. That didn't happen here. GSP licensing is a wholly separate entity. They are not an insured. Focus on the issue. In denying the motion for reconsideration, did the district court even confront the very tough Missouri cases that we've talked about, Weaver, Columbia Casualty, Tresnor? I believe they did, Your Honor. And the cases that we would point out to is the Sprint Lumber and the Cincinnati versus the Missouri Highway Transportation Commission. Well, wait, are these Court of Appeals cases? Because I noticed that you have a lot of Missouri Court of Appeals cases that are before these Supreme Court decisions and therefore have no authority in Missouri. Well, I believe the one is Sprint Lumber. I thought that was a 21 case, and I thought that was after. And again... It isn't a Missouri Supreme Court case. No, it is not, Your Honor. Well, counsel, the Missouri Supreme Court is so tough on this issue. And I understand you're trying to draw some time of coverage, and I looked at the language here from Weaver, and Weaver is so tough about the burden and what they have to do. And, you know, the Weaver case had a big, long affidavit about how they were so terribly harmed by the delay in providing notice, and the Missouri Supreme Court said all that. I think they said it has to be a trial was the bottom line. So you need to tell me again how you get around those cases. Again, Your Honor, Weaver, I think the main distinction of Weaver is that there was a denial of coverage. We denied coverage at the time. Yes, you did. You did. No, wait. It's a failure to provide coverage. Are you leaning on the word deny coverage? I don't want to go slowly because Weaver says provide coverage, not deny coverage, but provide coverage. You didn't provide coverage, right, during this period of time, and you didn't have notice of it. Correct. Correct. And now you're not paying for the fees for it. Right? That's correct, Your Honor. Okay, so that fits right in, Weaver, that says you've really got to show prejudice. No presumption of prejudice. Well, Your Honor, I respectfully disagree because, again, I think the main fact is, the difference here is, is when we were put on notice, when we were put on notice, we immediately provided coverage, and the policy language... You provide coverage for fees. Are you splitting fees off from coverage? Tell me who you're arguing. Both. Both. We provided coverage for... But you didn't provide the fees. We provided the fees after we were put on notice, after March 9, 2019, we did. So you say, so you're trying to read those cases to say, it's only after the time you decide to provide notice that you have to pay the fees, right? Correct. That's your preliminary argument. Correct. And, Your Honor... Boy, that is contrary to Weaver, the facts of Weaver, isn't it? I... Have you read the long affidavit in Weaver? I did, Your Honor. I did. Okay, so that's contrary to Weaver. And, again, I think if we were under different circumstances, where we had here, where the insurance company didn't say, I'm sorry, you didn't provide us any substantial... We believe we were prejudiced, so we don't believe we owe you fees, we don't owe you identity, we don't owe you anything. You know, the policy is clear that an insured is not to take on any, any obligation... That's the failure to cooperate clause that Weaver talks about at great length. And I... The sentence begins, an insured's failure to comply with the cooperation clause supports a refusal to provide any coverage, only if the insurer can show, and you know the elements you have to show, and you really have to show in Missouri. Well, Your Honor, again, I think it's... I'm quoting... That was a quote from Weaver, by the way. Yes, Your Honor. But if you look at... That is not the provision. The provision is... And I'm looking for it real quickly here, Your Honor, so I can read it. When it comes to pre-notice fees. No insurer will accept at their own cost, voluntarily make any payment, assume any obligation, or incur any expense, other than for first aid, without our consent. It's not... It's not the cooperation issue. And this is directly out of the highway... Missouri Highway Transportation Commission, which I believe is also... from the same holding in Sprint, which I don't believe Weaver overruled, which the Court of Appeals in 19... in 2021. An insurer has no duty to pay fees incurred prior to the insurer's demand for coverage. And disagreed with the insurer in the trial court, finding that the insurer was only entitled to fees beginning when the insurance company was first notified of the lawsuit. Can I ask... I'm confused about the facts here. Not... My notes say... You were notified of the lawsuit on March 4, 2019. That's about correct. I think it's March 9, but I might be wrong on that, Your Honor. You sent a... You sent a letter. You were investigating the next day. Correct. Two weeks later, the magistrate judge recommended dismissal of the Oregon suit for lack of personal jurisdiction. Now, was there a motion to dismiss? Or was that still a finding? I believe there... I believe there was a motion to dismiss that was filed prior to Cincinnati's notice in the Oregon case. So Jacob Rieger hired his own counsel. So what... So when you're... So you have no duty because what? So if you had accepted the defense between the 5th and the 20th of March, you still wouldn't have had any duty to pay the fees that were obviously already incurred prior to the notice? Is that your position? That is the position. We think that's directly out of the policy judge and supported by the sprint number as well as the highway transportation case. That under the policy, they cannot incur any defense. And there's other cases that go on about that when notice isn't provided... No, no. If they get our suit served on Monday, hypothetical insured, with a complaint and a motion for a temporary restraining order and a follow-on preliminary injunction, and they can't get the notice to the insurer until after the emergency hearing on the TRO motion, the insurer is off the hook. No, no, no. Well, that's what you just told me. Well, no, Your Honor. And that is kind of addressed in, I believe, the Treasurer v. State Farm case, one of the cases that they addressed. You're relying on the policy language. I'm relying... Right. I'm trying to rely on common sense. Treasurer talks about that. Treasurer talks about the inability of the insured to provide timely notice. If you look at the cases that we cited in our brief, there's got to be some justifiable excuse as to why they didn't do it. I just gave you one. So what's... And, Judge, that would fall, I think, squarely in Treasurer. Treasurer is a little bit different factually, but it's your same argument. In Treasurer, the insured, I believe, was incapacitated for a health reason and was unable to provide, provide notice. So is your defense there was untimely notice? Correct. This lawsuit was going on for... Was that the basis of the decision? Correct. For the pre-notice fees. Again, Your Honor, we paid for everything, fee-wise, from March, you have 4th, I think it's the 9th, 19th through the end of the Oregon lawsuit. This lawsuit was pending since October of 18. Five months, yeah. And if you look at all the cases we cite, there has to be some justifiable excuse as to why they didn't provide us notice. There is none. They haven't even argued one. This is a sophisticated company. There is... Unlike the example you used, there wasn't a timeliness issue. They had over five months to do it. So that example and what was basically decided in Treasurer that there was a justifiable excuse, here they aren't even arguing that. There's been never any answer given as to why it took so long for them to get notice to the thing. Your Honors, I realize this is a big issue and the case is over, but I do, I have two and a half minutes, I do also want to address the issue on our cross-appeal, which is the motion for sanctions. If the court would allow me to just very briefly argue that, because it is our position on that motion for sanctions in the cross-appeal that the court did abuse its discretion in order to sanction for $32,000. You certainly can use your time to argue it. That's about the steepest uphill hill to climb on appeal that I know of. I understand, Your Honor, but if we look at Rule 37, local Rule 37, it prevents... I don't argue that. I mean, discovery disputes are for the district courts. I understand that, Your Honor, but in order for them to have to have a grounds to sanction us for discovery, there has to be some sort of violation of the court under Federal Rule 37. There wasn't. There was never even a motion to compel filed. You know, when... This is all in the briefs. Thanks, Your Honor. I'm not saying don't argue it, but really, that's all briefed. The district court disagreed that there was no violation. Thought it was a clear violation of at least a phone conversation. And that's the point, Your Honor. It was a phone conversation. That's their prerogative. I understand, Your Honor. So, again, getting back to the pre-notice fees, then, we would direct this court to the Sprint decision, the Cincinnati v. Highway Transportation decision, the other decisions that clearly, clearly say you have to have some justifiable excuse. Counsel, you don't rely on Doe Run at all, right? Correct, Your Honor. Okay, proceed. Yes. Go ahead. I think it stands for the same thing. No, no, no. Don't say that. I understand that. You're correct, Your Honor. But if you... Unless they can come up with some argument that we had, they had some justifiable excuses, similar to what Judge Loken gave in his example, or something similar to what is in the Trezner case, this is not a forfeiture case, a forfeiture of coverage, Cincinnati did not walk away from its insured, and it provided the coverage once it was provided notice of it. So, unless the court has any further questions, I will sit down. Thank you. Mr. Wilders, I don't normally do this, but I think the argument here is that based on Sprint, Cincinnati, and of course the doesn't mean anything Doe case, that this is more open than the old 90s cases appear to make it be. And so you better clearly address Sprint and Cincinnati and how they play with this, since the same provisions in there that was in those cases. Sure, Judge Benton. Neither of those cases even address the issue of prejudice under the Missouri Supreme Court insurance law, because neither of them were actually insurance policy cases. So our position is that they're not relevant. And to the issue that... Well, the counsel says an insurance company in both of them. But they were indemnity cases, I don't believe they involve coverage. Okay. And I would respond to counsel's suggestion that in order to invoke this prejudice rule, you have to have an excuse for the delayed notice. With the quote from Weaver, which I think is the seminal case on this, they say, where the insurance company interest have not been harmed by late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice provision and the policy is lacking. That's why prejudice is required. That's the rationale. An excuse is not necessary. Finally, with respect to whether the Voluntary Obligations Clause is somehow treated differently. May I finish that thought, Your Honor? Yes. Okay. Whether the Voluntary Obligations Clause is treated differently. I would cite the court to Judge Benton's opinion in the State Farm Fire. In this case, that clause, was that issue there as it was also in the Johnston v. Sweeney, Missouri Supreme Court case. The court still applied the prejudice rule in those circumstances when policies contain that language. We respectfully seek reversal on those issues and affirmance of the sanctions award. Thank you. Thank you, Counsel. Case has been thoroughly briefed and argued and we'll take it under advisory.